# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

VICTORIA E. PICKENS,                )
                                    )
            Plaintiff,               )
                                    )
v.                                   )    Case No. CIV-07-225-RAW
                                    )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security Administration,             )
                                    )
            Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Victoria E. Pickens ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 2, 1984 and was 22 years old at the time of the ALJ's decision. Claimant completed her education through the twelfth grade including some special education classes. Claimant has worked in the past as a fast food worker. Claimant alleges an inability to work beginning April 1, 2004, due to bilateral hearing loss and mental retardation or borderline intellectual functioning.

## Procedural History

On April 22, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's applications were denied initially and upon reconsideration. On August 9, 2006, a hearing was held before ALJ Ralph L. Wampler in Ardmore, Oklahoma. By decision dated October 27, 2006, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On May 21, 2007, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform light, unskilled assembly work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) arriving at an RFC which is not supported by substantial evidence; (2) failing to conduct an appropriate step five analysis; and (3) failing to

perform an appropriate step three analysis.

## ALJ's RFC Findings

Claimant contends the ALJ conducted an erroneous RFC analysis. Claimant suffered from congenital bilateral sensorineural hearing impairment beginning at age 8. At that time she began wearing hearing aids. On August 25, 2004, Claimant was attended by Dr. Mike McGee. He noted Claimant wore the same hearing aids until about 2001 or 2002 that she had worn since she was eight years old. She quit wearing them when they began hurting her ears. Dr. McGee's hearing tests revealed symmetrical sensorineural hearing loss of 50 db on the right and 55 db on the left with "pretty good" discrimination scores of 76 percent bilaterally. Dr. McGee noted improvement from the use of stock hearing aids but recommended that Claimant obtain binaural hearing aids. (Tr. 225).

On August 31, 2004, a non-examining state agency physician, whose name is unreadable in the record, determined Claimant should "avoid areas with loud background noises or where failure to hear could endanger her or others." The physician also found Claimant could communicate with coworkers and supervisors. (Tr. 230).

On September 14, 2004, a second non-examining state agency physician found Claimant was moderately limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. However, the physician also found Claimant was "able to retain and carry out simple and some more

5

complex tasks with routine supervision" and was "able to adapt to work situations." (Tr. 235, 237).

A Psychiatric Review Technique form was completed on Claimant by Tom Shadid, Ph.D. on September 14, 2004. He determined Claimant suffered from an organic mental disorder. (Tr. 239). This disorder resulted in mild limitations on Claimant's daily activities and social functioning and moderate limitations in her ability to maintain concentration, persistence, or pace. (Tr. 249). From November of 2002 Wechsler testing, Dr. Shadid noted Claimant possessed a verbal IQ of 71, performance IQ of 84, and a full scale IQ of 75. (Tr. 240, 251). Dr. Shadid found Claimant suffered from borderline intellectual functioning. He noted Claimant can read, write, add, subtract, multiply, and divide, follow instructions and "could adjust to a job." He found Claimant "can make personal and social decisions." (Tr. 251).

On May 20, 2006, Claimant saw Burke Chandler, an audiologist, for an audiometric examination. Mr. Chandler found Claimant suffered from bilateral severe sensorineural type hearing loss characterized by speech reception thresholds of 55 db HTL on the left and 50 db HTL on the right. Claimant was found to have reduced speech discrimination scores of 62% on the left and 72% on the right when measured with earphones, without visual cues. Mr. Chandler noted that his office had conducted prior testing on Claimant on May 27, 1994 and that her hearing loss has increased.

6

In Mr. Chandler's opinion, Claimant's ability to utilize her residual hearing sensitivity, particularly in the presence of competing background noise, is poor. Claimant has a tendency to simply agree with a question even though she had not heard it. (Tr. 275).

Claimant's cognitive problems were first noted by a second grade teacher in October of 1992. The teacher referred her for evaluation. (Tr. 211-212).

On February 25, 1993, Claimant underwent cognitive evaluation with the administering of a standardized Woodcock-Johnson test. The testing revealed Claimant's broad cognitive ability to be the age of five years and seven months despite being chronologically eight years and ten months old. (Tr. 287). The examiner concluded Claimant's test results showed very low cognitive/aptitude abilities with moderate to significant academic deficits in oral language, reading and writing skills. (Tr. 290-291).

On March 30, 1993, Claimant's educators completed a Learning Disabilities Evaluation Summary and Multidisciplinary Evaluation Plan and Team Summary for her. They noted Claimant's low intellectual and cognitive scores and felt she would not ask for help because she was afraid of being singled out. (Tr. 207-209).

On May 14, 1993, Claimant's special education teacher completed a School Activity Report on her. She noted Claimant was making academic progress. (Tr. 193-194).

7

In April of 1994, an Individualized Education Plan ("IEP") was formulated for Claimant. The IEP showed standardized test scores at a grade level of 3.3 in math, 2.4 in reading recognition, and 2.5 in spelling. (Tr. 188).

An additional IEP was completed in April of 1995 when Claimant was between the fourth and fifth grades. It noted standardized test scores at a grade level of 4.2 in math, 2.4 in reading recognition, and 3.0 in writing. (Tr. 183). A lack of interaction with classmates was stated as well as Claimant's inability to complete class work. (Tr. 186-187).

In April of 1996, a new IEP was developed for Claimant. Claimant's standardized test scores indicated performance at a fourth grade level in math and second grade level in spelling and third grade level in reading recognition. (Tr. 175). Claimant remained in special education classes due to her low academic performance. (Tr. 177-178).

In April of 1997, an IEP noted standardized testing revealed Claimant to be functioning at a second grade level in math, a 2.3 to upper third grade level in reading, and a 2.9 grade level in spelling. (Tr. 161). According to the IEP, Claimant would remain in special education classes. (Tr. 165).

On April 28, 1997, Claimant underwent cognitive testing utilizing a standardized Woodcock-Johnson test. Claimant's broad cognitive ability age was found to be nine years and four months.

(Tr. 278, 280).

In April of 1998, Claimant's IEP noted Wechsler testing showed basic reading scores at a 3.2 grade level and basic spelling scores at a 3.1 grade level. Peabody testing showed Claimant to be reading at a lower third to fourth grade level and Brigance testing showed a third grade math level. (Tr. 144).

In December of 1999, Claimant's IEP noted Wide Range Achievement Testing which showed Claimant possessed a third grade proficiency level for reading, spelling, and math skills. (Tr. 138). In February of 2001, Claimant's IEP set forth Wide Range Achievement Testing with a third grade level reading and spelling skills and fifth grade math skills. Claimant continued in special education classes. (Tr. 131-133).

In February of 2002, when Claimant was age 17 and in the eleventh grade, an IEP indicated Wide Range Achievement Testing with third grade reading and spelling skills and fifth grade math skills. The IEP noted Claimant's low self-esteem and an inability to integrate into regular classes. (Tr. 119). Claimant graduated from high school in May of 2003. (Tr. 106-109).

A determination on a claimant's RFC must be supported by substantial evidence. Miller v. Chater, 99 F.3d 972, 975-976 (10th Cir. 1996). An ALJ must discuss the significantly probative evidence which he rejects and should refrain from picking and choosing the evidence which is favorable to his position. Clifton

9

v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In his decision, the ALJ found Claimant should "avoid areas with loud background noises" while noting "[s]he has problems if there is background noise." (Tr. 21). The medical evidence indicates Claimant cannot work in areas where any background noise is present. The May, 2006 report of Mr. Chandler reveals this limitation. Despite the probative nature of Mr. Chandler's report, the ALJ failed to reference its findings at all in his decision. Indeed, the only reference to "loud" background noise is the August, 2004 report of a nonexamining agency physician. Since the physician did not actually see Claimant, it is unclear if this was merely a gratuitous term or one based upon medical evidence. In any event, ". . . evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)(citations omitted). Because of the inconsistency and lack of support for the ALJ's finding, his decision must be reversed and the matter remanded for further consideration.

It also appears from the ALJ's decision that he ignored or failed to cite to any of the evidence of Claimant's intellectual limitations. The ALJ did not consider the myriad of functional testing done throughout Claimant's education, including the various IEPs developed for her by educational professionals most familiar with her abilities. Alternatively, he did not set forth the reason

such evidence was not considered or was rejected by him in reaching his RFC assessment. This, too, constitutes error which must be corrected on remand.

### Step Five Analysis

Claimant next asserts that the ALJ failed to pose hypothetical questions to the vocational expert whose testimony he elicited at the hearing. The vocational expert, Jennifer Sullivan, was asked by the ALJ to offer an opinion as to the jobs available to a claimant "who has some hearing problems." (Tr. 318). "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). The ALJ's hypothetical questions posed in this case do not mirror Claimant's restrictions with sufficient precision so that the testimony obtained may be relied upon as substantial evidence for the ALJ's step five finding. The ALJ should have specifically identified Claimant's restrictions concerning exposure to background noise – he did not. On remand, he should rectify this deficiency.

### Step Three Analysis

Claimant also contends the ALJ improperly determined Claimant did not meet a listing. Without the ALJ's consideration of the

11

entire record of Claimant's intellectual impairments, including her school records and testing, this Court cannot properly evaluate whether her conditions meet Listing 12.05(C) as alleged by Claimant. On remand, the ALJ shall consider all of Claimant's impairments and re-evaluate his rejection that those impairments meet a listing.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and REMANDED** for further proceedings.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2008.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE